UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN L. DAVIS, JR.,

      Plaintiff,

v.                             CASE No. 8:11-CV-2398-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

ORDER

      The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

      The plaintiff, who was thirty-seven years old at the time of the administrative hearing and who has a high school education, has worked

---

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

primarily as a laborer and truck driver (Tr. 38, 39, 173).  He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to asthma, knee problems, and high blood pressure (Tr. 161).  The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge.  The law judge found that the plaintiff had severe impairments of asthma, degenerative joint disease of the knees, chest pain, and hypertension (Tr. 21).  The law judge concluded that these impairments restricted the plaintiff to medium work with a frequent limitation for working in temperature extremes or environmental pollutants such as pollen or fumes, but capable of performing routine tasks in an air conditioned environment (Tr. 22).  The law judge determined that these limitations prevented the plaintiff from performing past work (Tr. 25).  However, based upon the testimony of a vocational expert, the law judge found that there were jobs in significant numbers in the national economy that the plaintiff could perform, such as packager, assembler, and general machine operator (Tr. 26).

The Appeals Council granted review of the decision of the law judge. It concluded that the plaintiff had the additional severe impairment of obesity (Tr. 5). However, it determined that that impairment did not create any additional functional limitations (id.). Accordingly, it adopted the residual functional capacity found by the law judge (id.). It also adopted the law judge's determination that, with that residual functional capacity, there were jobs in the national economy that the plaintiff could perform (id.). Therefore, the Appeals Council decided that the plaintiff was not disabled (Tr. 6).

## II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims.  See 20 C.F.R. 404.1520, 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled.  20 C.F.R. 404.1520(b), 416.920(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. 404.1521(a),

416.921(a).  If there is not a severe impairment, then a claimant is deemed to be not disabled.  20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, the next inquiry is whether the claimant meets, or equals, a listing in Appendix 1 (step three).  If so, the claimant is deemed disabled.  20 C.F.R. 404.1520(d), 416.920(d).  If not, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work.  20 C.F.R. 404.1520(f), 416.920(f).  If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy.  20 C.F.R. 404.1520(g), 416.920(g).

### III.

The plaintiff challenges on four grounds the decision of the Commissioner, which is the decision of the Appeals Council as supplemented by those portions of the law judge's decision that it adopted.  The plaintiff's contentions do not support relief.

The plaintiff states his first issue as follows (Doc. 18, p. 8):

The ALJ erred in determining that the claimant has the residual functional capacity to perform medium

> work in an air conditioned environment with a
> frequent limitation for working in areas with
> temperature extremes or environmental pollutants
> such as pollen or fumes after failing to adequately
> consider the evidence of the claimant's multiple
> hospitalizations and failing to state the weight he
> assigned to any medical opinion in the record.

The point of this contention is that the plaintiff had a number of hospital

visits because of his asthma and that a vocational expert testified that,

because of these hospitalizations and emergency room visits, the plaintiff's

ability to maintain employment would be affected (id., p. 9). This contention

is not supported by the record.

In the first place, the plaintiff's issue suggests that there are some

medical opinions that support the plaintiff's contention. From time to time

doctors opine that a plaintiff will miss a certain number of days per week or

month due to his impairment. However, there are no such opinions in this

case.

Moreover, there are no opinions from any doctor that supports

the plaintiff's argument. The plaintiff had no primary care physician or

specialist. As the law judge noted (Tr. 25), and the plaintiff acknowledges

(Tr. 48), the plaintiff "goes to the emergency room for his normal treatment

and has no normal/regular doctor treating him for his asthma." In this respect, the plaintiff told the Social Security Administration that he has no treating source, that the emergency room gives him breathing treatment, and that, when he runs out of medication, he goes to the emergency room for treatment (Tr. 172).

Under these circumstances, the plaintiff's string citation of hospital visits (see Doc. 18, p. 11) is unpersuasive and insufficient to satisfy the requirements of the scheduling Order. That Order specifically requires that each discrete issue "must be supported by citations to the record of the pertinent facts" (Doc. 16, p. 2). Simply noting the dates the plaintiff went to the hospital does not constitute a meaningfully developed and accurate argument. For example, the plaintiff refers to a visit on January 31, 2010 (Doc. 18, p. 11). However, on that occasion, the plaintiff complained of right knee pain and there was no discussion of asthma (Tr. 312). Similarly on his visit of July 7, 2010, the plaintiff complained of sharp chest pain and the diagnosis was of "atypical chest pain" (Tr. 337). The note from that visit reported, furthermore, that the plaintiff was supposed to be on an inhaler but had not used one in approximately three months (id.).

Likewise, while the plaintiff was admitted to the hospital with a diagnosis of acute asthma exacerbation (Tr. 352), the notes stated that the plaintiff was supposed to be on certain medications, that he did not have the financial resources to get the medications, and that he was out of them (Tr. 351).

Significantly, while the plaintiff has been diagnosed with asthma, that diagnosis alone is not sufficient to establish that the plaintiff is disabled. Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

In this case, the Appeals Council, like the law judge, found that the plaintiff had a severe impairment of asthma. Both concluded further that the plaintiff was restricted to medium work "with a frequent limitation for work in areas of temperature extremes or environmental pollutants such as

pollen or fumes, but capable of performing routine tasks in an air conditioned environment" (Tr. 22). The plaintiff does not argue that his asthma requires any greater functional limitations.

The only restriction that the plaintiff asserts is that the number of hospitalizations and emergency room visits would preclude employment (Doc. 18, p. 11). This assertion is predicated upon the proposition that "[t]he vocational expert clearly testified that this number of absences [between July 14, 2009, and October 28, 2010] caused by this number of hospitalizations and emergency room visits would affect a person's ability to maintain employment" (id.). This is not an accurate statement of the expert's testimony. The expert was not asked about absences between July 2009 and October 2010. He was only asked about absences in April and December 2008 (Tr. 55). Moreover, he stated that those absences would be borderline, explaining that, in addition to normal vacation time, absences of one day per month would be tolerable (id.).

Here, the plaintiff does not challenge the absences from 2008. In this respect, he acknowledges that the assessment by Dr. Janet Gibson, a nonexamining reviewing physician, may have been accurate at the time of her

opinion on June 21, 2009 (Doc. 18, p. 10). In that opinion, Dr. Gibson stated

(Tr. 300):

> He may need more aggressive management of his asthma as well but he should be able to sustain gainful activity within the limits of this RFC [which was essentially the same as that of the law judge and Appeals Council]. He does not seem to be compliant with his medication and may need more education as to the nature of his disease. He has not had that many hospitalizations or ER visits as a result of his asthma. I have considered his multiple medical problems in reducing his RFC. However he has normal motor strength and full use of all extremities. He should be able to work.

Also, as the law judge pointed out (Tr. 24), on a visit to the emergency room

on December 12, 2008, the doctor noted that the plaintiff has a history of

asthma, which is usually mild and intermittent, and he takes Albuterol

intermittently only (Tr. 247).

In light of this evidence, the plaintiff argues only that hospital

visits between July 2009 and October 2010 demonstrate that the plaintiff

could not maintain employment. In the first place, the vocational expert was

not asked about those visits. More importantly, the plaintiff has not

attempted to show that the visits during that period, which include visits that

-11-

have nothing to do with asthma, would result in absences averaging more than one per month, especially if the plaintiff was compliant with his medication regimen. Notably, hospital emergency rooms are open on nights and weekends so that in many instances the plaintiff could plan his visits without interfering with work. Consequently, the plaintiff's conclusory assertion that he will be unable to maintain employment as a result of absences due to his impairments lacks merit.

Furthermore, the record does not warrant a finding by the Commissioner that the plaintiff is disabled because of his inability to maintain employment. As previously indicated, there is no opinion from any doctor that the plaintiff will miss days due to asthma. Moreover, Dr. Gibson stated affirmatively that, despite the plaintiff's asthma, he should be able to sustain gainful activity within the limits of his residual functional capacity. In addition, the plaintiff underwent a consultative examination by Dr. Morris Kutner which yielded an opinion that the plaintiff's "functional assessment is such that he probably should not work in an environment where he would be exposed to noxious fumes that may trigger off asthma attacks" (Tr. 292). Dr. Kutner did not suggest any other functional limitation, and the

-12-

Commissioner's determination of the plaintiff's residual functional capacity is consistent with that limitation.

Also, the law judge's analysis of the plaintiff's hospital visits reflects that the plaintiff would not miss work an unacceptable number of times due to asthma. In his decision, the law judge appropriately summarized the evidence (Tr. 23-24). He then assessed the significance of the plaintiff's hospital visits (Tr. 24-25). He stated (Tr. 25):

> In conclusion, we have a young individual with high blood pressure but no severe heart disease. He apparently goes to the emergency room for his normal treatment and has no normal/regular doctor treating him for his asthma. Therefore, each time the claimant has a problem he goes to the emergency room. Staff in the emergency room normally find few infiltrates, good oxygen saturation, and they treat claimant and send him home. This was the same impression the consultative examiner had when he examined claimant. It is also noted that evidence of record shows that claimant takes his medication intermittently and is often noncompliant.

This is a reasonable evaluation of the plaintiff's condition. It was not specifically challenged by the plaintiff.

Furthermore, it is clearly implicit in the law judge's conclusion that the plaintiff's asthma will not cause him to be absent from work an unacceptable number of times, such as more than an average of one time per month. For the reasons stated, this conclusion is supported by substantial evidence. Moreover, the plaintiff clearly has not shown that the evidence compels a contrary conclusion. See Adefemi v. Ashcroft, supra.

Accordingly, the plaintiff has failed to sustain his challenge in the first issue that the law judge erred in determining the plaintiff's residual functional capacity in light of the plaintiff's hospitalizations and any medical opinions in the record. This failure defeats the second issue as well.

In his second issue, the plaintiff contends that the law judge improperly relied upon the testimony of the vocational expert because the hypothetical questions to the expert did not accurately reflect the plaintiff's limitations (Doc. 18, p. 11). In particular, the plaintiff asserts that the hypothetical question did not include a limitation due to absences from frequent hospitalizations (id., pp. 12-13). However, as just explained, the law judge implicitly rejected such a limitation. The law judge is not required to include restrictions in the hypothetical question that he properly finds are

unsupported. <u>Crawford</u> v. <u>Commissioner of Social Security</u>, 363 F.3d 1155, 1161 (11th Cir. 2004). Consequently, the law judge did not err because he did not include a restriction regarding absences in the hypothetical question.

It is appropriate to add that, even if the plaintiff's asthma would result in absences to the extent indicated in the hypothetical question asked by the plaintiff's representative, the plaintiff nevertheless has failed to carry his burden to show that the plaintiff could not perform the jobs identified by the vocational expert. At the fifth step in the sequential analysis, the burden shifts to the Commissioner to identify jobs that the plaintiff can perform. <u>Jones</u> v. <u>Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999), <u>cert</u>. <u>denied</u>, 529 U.S. 1089 (2000). However, once the Commissioner has done that, the burden shifts back to the plaintiff to show that he cannot perform the jobs that have been identified. <u>Id</u>.

In this case, the Commissioner, through the testimony of the vocational expert, identified three jobs the plaintiff could perform. When the plaintiff's representative in response asked the expert whether the plaintiff could perform those jobs if the plaintiff had the absences that took place in 2008, the expert said it was "borderline" (Tr. 55). That equivocal answer

does not carry the plaintiff's burden to show that he could not perform the three jobs.

The expert explained that employers would generally tolerate an average of one absence per month (id.). Thus, the expert, by saying the situation was "borderline," appeared to mean that, if an employee was not absent more than an average of one day per month, he could maintain employment. In this case, the plaintiff would have had hospital visits on fourteen days (including visits for the knee and chest pain) in the fifteen months from July 14, 2009, to October 29, 2010, which is the period cited by the plaintiff. Therefore, these absences would be tolerated by the employer.

It is possible that, by saying the hypothetical situation proposed by plaintiff's representative was "borderline," the expert meant that some employers would find the number of absences acceptable, and some would not. However, even if only 50% of the employers would find the absences acceptable, there would still be a significant number of jobs available in the national economy that the plaintiff could perform. Thus, if the numbers relied upon by the law judge were reduced by 50%, there would be 300 jobs locally, 4,850 jobs state-wide, and 153,000 nationally (see Tr. 26).

Consequently, even if the Commissioner had accepted the number of absences asserted by the plaintiff – and he reasonably did not – the plaintiff has failed to carry his burden to show that, due to absences, he could not maintain employment in the jobs identified by the expert.

The plaintiff's third issue is that the law judge erred because, as directed by Social Security Ruling 00-4p (SSR 00-4p), 2000 WL 1898704, he did not ask the expert whether his testimony conflicted with the Dictionary of Occupational Titles (DOT) (Doc. 18, p. 13). That Social Security Ruling is designed to identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a vocational expert and information in the DOT. To this end, the Social Security Ruling states that "[w]hen a VE [vocational expert] ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE ... evidence and information provided in the DOT." 2000 WL 1898704 at *4. This contention is meritless for three reasons.

First, while the law judge did not ask the expert whether his testimony was consistent with the DOT, it was unnecessary for him to do so.

-17-

Thus, as the Commissioner points out, the expert provided the DOT number for each occupation he specified, thereby indicating that he was basing his testimony on the DOT (Tr. 53-54).   Notably, the expert pointed out, with respect to the job of assembler or bench worker, that, while the DOT classified the job as light work, the Bureau of Labor Statistics indicates that it also exists at the medium exertional level (Tr. 53).  Accordingly, the law judge expressly found that, "[p]ursuant to SSR 00-4p, the vocational expert[']s testimony is consistent with the information contained in the Dictionary of Occupational Titles" (Tr. 26).   The plaintiff has made no attempt to show that this finding is erroneous.

Second, even if the law judge failed to comply with SSR 00-4p, that would not warrant reversal.  SSR 00-4p is neither a statute nor a regulation and therefore does not have the force of law.   Miller v. Commissioner of Social Security, 246 Fed. Appx. 660, 662 (11th Cir. 2007). Accordingly, a violation of that directive would not amount to reversible error.

Third, even assuming there is a conflict between the expert's testimony and the DOT, the expert's testimony would prevail. Jones v. Apfel,

supra, 190 F.3d at 1229-30. Thus, the Eleventh Circuit has held that, where there is a conflict between the expert's testimony and a job description contained in the DOT, "the VE's testimony 'trumps' the DOT." Id.

The plaintiff's final issue is that the law judge erred in finding that he was not credible after failing to make an adequate credibility determination (Doc. 18, p. 15). The contention also lacks merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable

basis for rejecting such testimony." <u>Hand</u> v. <u>Heckler</u>, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 22). He even cited <u>Landry</u> v. <u>Heckler</u> (<u>id</u>.). This demonstrates that the law judge employed the proper standards. <u>See</u> <u>Wilson</u> v. <u>Barnhart</u>, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge stated in his decision (Tr. 23):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The plaintiff asserts that this is a stock paragraph that is not enough (Doc. 18, pp. 15-16). However, the paragraph directly answers the two-step evaluation process that is set out in the law judge's decision (Tr. 22) that reflects the Eleventh Circuit's pain standard, the regulations, and most specifically Social Security Ruling 96-7p, 1996 WL 374186 at *2. Consequently, it is a standard

paragraph because it responds to the two mandated inquiries. Moreover, the plaintiff has not provided any authority showing that the paragraph is inadequate as a credibility determination.

In any event, the law judge did provide additional reasons why the plaintiff was not fully credible. Thus, the law judge indicated that the objective medical evidence did not reflect that the plaintiff's asthma was disabling. In this respect, the law judge stated that "[s]taff in the emergency room [where the plaintiff goes for treatment] normally find few infiltrates, good oxygen saturation, and they treat claimant and send him home" (Tr. 25). The law judge added that "evidence of record shows that claimant takes his medication intermittently and is often noncompliant" (id.). From this latter comment, the law judge could reasonably conclude that, if the plaintiff's asthma were as disabling as he now asserts, he would be more conscientious about obtaining and taking his medications.

In addition, the law judge made the following statement that reflects on the plaintiff's credibility (Tr. 24):

> In summary, the evidence of record indicates that the claimant's alleged onset date is December 2008 but claimant collected unemployment compensation from January 2009 through the first quarter of 2010. In order to do so, he must assure

the State of Florida that he is ready, willing and able to work; and actively seeking employment. Those assertions to the State of Florida are inconsistent with claimant's now claiming that he is disabled for the same period of time. (His receipt of unemployment compensation is not a bar to this application but claimant's assurances to the State that he could and would work if the job became available does go to the viability of his subjective complaints of pain for the same period).

The law judge also discounted the plaintiff's testimony that he used Albuterol every 30 minutes in light of a doctor's note that the plaintiff's asthma "is usually 'mild and intermittent' for which he takes Albuterol on an intermittent basis" (Tr. 24-25). The law judge stated further that the "reference to 'mild and intermittent' asthma during December 2008 does not support his claim for disability during the same month" (Tr. 25). The law judge could reasonably think further that, if the plaintiff would overstate his limitations for December 2008, he would overstate them for other months as well.

The law judge therefore has adequately explained his credibility determination. Moreover, the plaintiff on this point has not specified any testimony of the plaintiff that the law judge should have credited, but did not (see Doc. 18, pp. 15-16). Consequently, the plaintiff obviously did not show

by reference to the record, as required by the scheduling Order, that the law judge was compelled to credit some specific testimony by the plaintiff. Under these circumstances, the plaintiff's challenge to the credibility determination plainly fails.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this _13th_ day of December, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE